IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARK A. FLETCHER, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>CARLTON B. JOYNER, )<br>)<br>Respondent. ) | 1:13CV538 |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Mark A. Fletcher, a prisoner of the State of North Carolina, brings a Petition [Doc. #1] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On February 9, 2010, in the Superior Court of Moore County, Petitioner was convicted at trial of second-degree sexual offense, attempted rape, and assault on a female, and was sentenced to a total of over 252 to 321 months of imprisonment. (Petition, §§ 1-6.) The convictions were affirmed by the North Carolina Court of Appeals on direct review. State v. Fletcher, No. COA10-1418, 2011 WL 2473607 (N.C. App. June 21, 2011) (unpublished). Petitioner did not pursue his direct appeal further, but did later file a Motion for Appropriate Relief (MAR) and Amended MAR in the trial court, which the trial court summarily denied. (Additional Attach. to Respondent's Supporting Brief [Doc. #9], Exs. 12, 14.) However, Petitioner sought a writ of certiorari from the North Carolina Court of Appeals, which allowed the writ in part and entered an order reversing the trial court's imposition of lifetime

sex offender registration and satellite-based monitoring. The petition for a writ of certiorari was otherwise denied. (Additional Attach. to Respondent's Supporting Brief [Doc. #10], Ex. 19.) After a failed attempt at reconsideration in the North Carolina Court of Appeals, Petitioner filed his Petition in this Court. Respondent opposes the Petition with a Motion for Summary Judgment [Doc. #4].

## Petitioner's Claims

Petitioner raises five claims for relief in his Petition. The first is that the trial court erred by allowing "non-corroborative hearsay as substantive evidence" of sexual assault after the victim "never stated that she was sexually assaulted, neither did she state that she had been raped" during her trial testimony. (Petition, § 12, Ground One.) Next, he claims that the trial court erred by informing the jury, when it requested to see "Exhibit #1 of the police report," that the report had not been admitted into evidence. (Id., Ground Two.) In his third and fourth claims for relief, he contends that he received ineffective assistance of counsel at trial (Id., Ground Three) and on appeal (Id., Ground Four). Finally, he asserts that the trial court erred by refusing to redact certain statements from letters written by Petitioner to the victim. He believes that the jury would have reached a different verdict absent the admission of those statements. (Id., Ground Five.)

## Facts

The basic facts of Petitioner's case, as set out by the North Carolina Court of Appeals on direct review are as follows:

> F.G. met Mark Fletcher (defendant) in May of 2008 and a romantic relationship developed. During the summer of 2008, they began living together. In August 2008, defendant was arrested and incarcerated.

2

Defendant was released from jail on 15 September 2008. On 17 September 2008, defendant, while intoxicated, struck F.G. for the first time.

Although defendant continued to have problems with alcohol abuse and to exhibit violent behavior toward F.G., she continued to live with him. In late January of 2009, F.G. got a tax refund and together with defendant moved into a motel. After a few days at the motel, defendant and F.G. were involved in a domestic violence incident to which police responded. F.G. was arrested based upon an unrelated outstanding warrant.

On 31 January 2009, F.G. was released on bond and returned to the motel. Defendant was sitting in a parking lot across the street from the motel when F.G. returned. Defendant spoke with F.G., and followed her to the motel room. Defendant appeared to be intoxicated and told F.G. that he had used ecstasy the previous night. Defendant accused F.G. of sleeping with the bail bondsman. An argument ensued. When F.G. threatened to call the police, defendant left.

Defendant later returned and knocked on the door. F.G. opened the door, and defendant forced his way into the room. Defendant made more allegations of F.G.'s infidelity and struck her in the head and shoulders. Defendant pulled down F.G.'s pants and underwear. Defendant forced F.G. to engage in sexual acts and vaginal intercourse. F.G. repeatedly begged defendant to stop.

When defendant went to the bathroom, F.G. fled from the motel room and sought help by knocking on the doors of other guest rooms. Another motel guest, Juanita Hadwin (Hadwin), opened her door for F.G. Hadwin observed that F.G. was "very frightened" and "bruised on the side of her face[.]" F.G. told Hadwin that her boyfriend had beaten her and forced her to have sex. F.G. was wearing a t-shirt, with no shoes or underwear. Hadwin called 911, and F.G. stayed in her room until the police responded.

Fletcher, 2011 WL 2473607, at *1.

## Procedural Bar

Respondent has addressed Petitioner's claims on the merits, and also contends that all of Petitioner's claims, with the exception of his fourth claim for relief for ineffective assistance of counsel on appeal, are subject to a procedural bar. In this regard, Respondent

3

notes that the state MAR court concluded that Petitioner could have raised these issues in his direct appeal but failed to do so. Respondent therefore contends that because this state court determination rests on a ground that is independent of federal law, this Court may not consider those claims. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In response, Petitioner contends the state MAR court did not explicitly rely on procedural bar and argues that he adequately raised his claims.

Having considered these contentions, the Court notes that to the extent the state MAR court concluded that Petitioner's claims were procedurally barred under state law, those claims would be subject to dismissal in this Court. However, the Court further notes that no procedural bar issue has been raised as to Petitioner's fourth claim alleging ineffective assistance of counsel on appeal, and in considering that claim, the Court must address the merits of most of Petitioner's remaining claims, as set out below. Having done so, the Court concludes that Petitioner's claims are meritless on their face in any event. The analysis of these claims is therefore set out below.

## Standards of Review

This Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." Id. "Clearly established Federal law" includes only "'holdings, as opposed to the dicta,'" of the United States Supreme Court. White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Howes v. Fields, 132 S. Ct. 1181, 1187 (2012)). A state court decision is "contrary to" United States Supreme Court precedent if the state court decision either "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different" from the Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision involves an "unreasonable application" of Supreme Court case law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"). "[E]ven clear error will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003)). "Rather, 'as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 562 U.S. ___, ___, 131 S. Ct. 770, 786–787 (2011)). Finally, this Court must presume state court findings of fact correct unless clear and convincing evidence rebuts them. 28 U.S.C. § 2254(e)(1).

5

In this case, Petitioner contends that all of the claims were properly raised and adjudicated on the merits, which means that the standards of § 2254(d) would apply. The Court therefore considers Petitioner's claims under that standard.

## Claims One, Two, and Five

Petitioner's first, second, and fifth claim for relief all challenge the trial court's admission or treatment of certain pieces of evidence. As to all of these claims, the admission of evidence is a matter of state law. Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993). State law errors do not give rise to federal habeas claims absent a specific constitutional violation or fundamental unfairness. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir.1960). Here, Petitioner's first claim is that the trial court erred in admitting testimony from a police officer and from Juanita Hadwin that the victim told them on the night of the crimes that Petitioner beat and sexually assaulted her. He contends that these statements constituted "non-corroborative hearsay." This claim is patently frivolous. As Respondent points out, the victim's statements to Hadwin and the officer were made soon after the assault and were given at a time when the victim was still scared, crying, and, in the case of the statement to Hadwin, half-naked after having just fled the room where Petitioner assaulted her. Therefore, the statements were excited utterances, rather than inadmissible hearsay, under North Carolina law. See, e.g., State v. Guice, 141 N.C. App. 177, 201, 541 S.E.2d 474, 489 (2008) (discussing the "excited utterance" hearsay exception in North Carolina and holding that statements given by a still-crying victim to a responding officer minutes after an assault

constituted excited utterances). Further, the statements corroborated the victim's testimony at trial. Petitioner states in the Petition that the victim did not claim that she was "sexually assaulted" or "raped" at trial. Although she did not use those terms, his characterization of her testimony is simply false. The victim testified at length, and in sometimes brutal detail, that Petitioner forced his way into her motel room, beat her in the head and upper body, forced her onto a bed, grabbed her hair and forced her to perform oral sex on him, forcibly pulled off her pants and underwear, and then engaged in intercourse with her while she asked him to stop. (Additional Attach. to Respondent's Supporting Brief [Doc. #7], Trial Tr., Vol III. at 196-210.) When he got up to go to the bathroom, she fled the room, began knocking on random doors at the motel, and was able to get Hadwin to open the door and let her in. (Id. at 210-211.) Hadwin testified that the victim then told her that "her boyfriend had been hitting on her and had her in the room and wouldn't let her out and that he made her have sex with him. And when he went to the bathroom, she ran out the door." (Id. at 254.) Hadwin called the front desk, which called the police. Sergeant Allen, a police officer who responded to the call, testified that the victim told him that "she had been assaulted, sexually assaulted and beaten by her boyfriend, the defendant, for several hours, and that she was just able to break away out of the house - correction - out of the motel room when he had gone to the bathroom." (Additional Attach. to Respondent's Supporting Brief [Doc. #8], Trial Tr., Vol IV. at 283.) Whatever the terminology used or not used by the victim, the testimony of Hadwin and the officer concerning the victim's statements to them is clearly

7

corroborative of the substance of the victim's testimony. Petitioner's claim of error by the trial court is based on a false premise and fails for that reason.[1]

Petitioner's second claim for relief alleges that the trial court erred when the jury asked to see "exhibit #1 of the police report" and the trial court refused the request, stating that it had not been admitted into evidence. This is again an incorrect characterization of the events at trial. The State's exhibit #1 was a copy of the victim's statement to police, not the entire police report on the matter. (Petition, Attach., Evid. Log; Additional Attach. to Respondent's Supporting Brief [Doc. #8], Trial Tr., Vol IV. at 287.) Other reports were discussed during Sergeant Allen's testimony, but not marked or admitted into evidence. (Id. at 295-96.) Therefore, when the jury requested the "police report," the trial judge correctly, not erroneously, told them that the report was not part of the evidence. Under North Carolina law, he could not supply the non-evidentiary report to the jury, see State v. Combs, 182 N.C. App. 365, 373, 642 S.E.2d 491, 498 (2007), and Petitioner points to no established federal case requiring that an item not in evidence be given to the jury. Petitioner's second claim for relief also fails.

Petitioner's fifth claim for relief asserts that the trial court erred in refusing to redact certain statements from letters written by Petitioner to the victim after the assault. He does not list those statements in the Petition, but they were set out in a Motion to Redact filed by his attorney at trial and currently contained in the record of his direct appeal. (Respondent's Supporting Brief [Doc. #5], Ex. 1 at 6-7.) Petitioner's attorney sought the reaction of

---

[1] At times in his pleadings, Petitioner also contends that the trial court should have instructed the jury on non-corroborative hearsay. Any such claim obviously fails for the reasons just listed.

nineteen statements in the letters, and the trial judge agreed with most of the redactions, but allowed three of the challenged statements to be entered into evidence. They are: (1) "My most productive years of my life has been spent behind these walls"; (2) "I never wanted to come to this place again" and (3) "Moore county will verify that I was incarcerated on the date I was suppose to appear in Lee co so legally that can't get me a FTA." (Id.) Petitioner claims that these statements were "irrelevant and highly prejudicial to the Petitioner's defense" and maintains that, absent their admission, "the jury would probably have reached a different result." (Petition, § 12, Ground Five.)

However, even if Petitioner could show that the challenged statements should not have been admitted, he still cannot prevail because he cannot demonstrate, as he must where alleging a trial error on habeas review, that the admission of the statements "had a 'substantial and injurious effect or influence in determining the jury's verdict.'" Bauberger v. Haynes, 632 F.3d 100, 104 (4th Cir. 2011) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). Here, the State mainly built its case on the strong and detailed testimony of the victim, coupled with the corroborative testimony discussed above. Petitioner did not testify and called no witnesses on his behalf. His defense instead relied upon the cards, letters, and money that the victim sent to him in jail after the assault, as well as calling her credibility into question based on certain inconsistent statements and her prior criminal convictions. In the end, the case came down to whether or not the jury still believed her, and it did. Thus, it is unlikely that the challenged statements in Petitioner's letters played any significant part in the case and it cannot be said that the statements had a "substantial and injurious effect or influence" on the verdict. Accordingly, the claim should be denied.

## Claims Three and Four

Petitioner's two remaining claims are that he received ineffective assistance of counsel at trial and on appeal. As with his other claims, these claims easily fail. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). With respect to the first prong, the petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, to establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Petitioner's claim that he received ineffective assistance on appeal is also judged using the Strickland test. See Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). However, appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745 (1983); see also Smith v. Murray, 477 U.S. 527 (1986); Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy. Jones, 463 U.S. at 751-52. Prejudice can be shown by demonstrating that "'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" Bell v.

Jarvis, 236 F.3d 149, 180 (4th Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

Petitioner sets out five allegations of ineffective assistance by his trial attorney, three of which are based on counsel's failure to object to the alleged errors associated with Petitioner's first, second, and fifth claims for relief. However, as explained above, Petitioner's first, second, and fifth claims are without merit. The first and second claims do not reflect any errors, and therefore his attorney had no reason to object and also could not have prejudiced Petitioner by failing to object. As to the fifth claim, any alleged error did not result in any prejudice to Petitioner. Those three claims of ineffective assistance fail for that reason.

Petitioner also claims that his attorney failed to object when the trial court incorrectly imposed lifetime sex offender registration and satellite-based monitoring in the case. This claim should be denied as moot because the North Carolina Court of Appeals already corrected any error as part of Petitioner's MAR proceeding.

Finally, Petitioner asserts that his attorney should have objected when the trial court did not admit any physical evidence to support the sexual assault and rape charges. This contention is unclear, and it may be that Petitioner is confused. No physical evidence is required and, in any event, it would have been the State, not the trial court, which would have supplied any physical evidence that it wished to bring. Petitioner may be asserting that counsel should have made an insufficiency of the evidence argument based on the lack of physical evidence. However, counsel did make a motion to dismiss the sexual assault charges based on insufficiency of the evidence. (Additional Attach. to Respondent's

11

Supporting Brief [Doc. #8], Trial Tr., Vol IV., at 337.) The motion was summarily denied, which is not surprising given the victim's clear testimony that the assaults occurred. Such testimony is easily sufficient to allow the matter to go to the jury and to sustain a conviction. See State v. Whitman, 179 N.C. App. 657, 670, 635 S.E.2d 906, 914 (2006) (stating that it is "well-settled that the testimony of a single witness is adequate to withstand a motion to dismiss when that witness has testified as to all the required elements of the crimes at issue"). Petitioner does not explain what more his trial attorney could have done to argue or win the motion. In the end, Petitioner cannot show either substandard performance or prejudice based on his allegations regarding his trial attorney, and his third claim for relief should be denied.

Petitioner's fourth claim is similar. He contends that his appellate attorney incorrectly failed to argue on appeal that his trial attorney provided ineffective assistance in not challenging the admission of the statements in the letters that he sought to redact and by failing to object to errors in the jury instructions and the refusal of the trial court to let the jury review the police report. With respect to the statements in the letters, as discussed above, the admission of the statements did not prejudice Petitioner's case, and Petitioner cannot establish that he was prejudiced by any alleged ineffective assistance of counsel. As for the police report, it was not introduced into evidence, as discussed above, and there is no reason that either his trial or appellate attorney would have raised this point. Finally, Petitioner's reference to a jury instruction error is not clear in the Petition, but he states in his response that the error occurred when the trial court failed to give a jury instruction regarding non-corroborative hearsay. As set out previously, the statements alleged by

Petitioner to be non-corroborative hearsay do not appear to have been hearsay at all and were, in any event, highly corroborative of the victim's testimony. Therefore, no error occurred and there was no basis for his attorney to object or for appellate counsel to raise the matter on appeal. Next, Petitioner faults appellate counsel for failing to raise the sex offender registration and satellite based monitoring claim on appeal. Again, this claim is moot. Finally, Petitioner again refers to the trial court's failure to admit physical or medical evidence of the sexual assaults. This is an apparent reference to counsel failing to raise the insufficiency argument on appeal, and the claim has no merit for the reasons discussed previously. All of Petitioner's claims of appellate ineffective assistance fail and should be denied.

IT IS THEREFORE RECOMMENDED that Respondent's Motion for Summary Judgment [Doc. #4] be granted, that the Petition [Doc. #1] be denied, and that this action be dismissed.

This, the 8th day of August, 2014.

/s/ Joi Elizabeth Peake
United States Magistrate Judge